42281. SEABOARD SYSTEM RAILROAD, INC.
v. BANKESTER et al.
42311. CITY OF ATLANTA v. BANKESTER et al.
42312. ALLIED PRODUCTS CORPORATION
v. BANKESTER et al.
(330 SE2d 700)

GREGORY, Justice.

In January 1984 appellant Seaboard System Railroad, Inc. (Seaboard), submitted an application for a special use permit, to the City of Atlanta Bureau of Planning, seeking to convert its railswitching yard at Hulsey Yard in the Cabbagetown Historic District to an intermodal/truck terminal known as a "piggyback terminal." In accordance with city zoning procedures, the city zoning administrator drafted a proposed ordinance for the special use permit to be submitted to the City Council. Seaboard also filed an application for the rezoning of certain property located in the Cabbagetown district neces-

sary to accommodate its piggyback facility.[1] This application was also drafted as a proposed ordinance for presentation to the City Council. Councilman Morris Finley, whose district includes Hulsey Yard, proposed an ordinance to the City Council to rezone certain land owned by the city in order to facilitate the piggyback service.

On August 6, 1984, the City Council voted to approve all three proposed ordinances. On August 14, 1984, Mayor Young vetoed all three ordinances and the City Council, on August 20, 1984, sustained the Mayor's veto. Immediately thereafter Councilman Finley reintroduced the three ordinances proposing the grant of the special use permit to Seaboard and the two requested rezonings. In November 1984, the City Council voted to approve all three ordinances, and they were signed into law by Mayor Young.

Appellees, residents of the Cabbagetown Historic District, filed suit against appellants, seeking to enjoin the construction of the piggyback facility. The trial court granted the injunction and we now reverse.

1. Section 16-25.003 (4) of Chapter 25, "Special Permits,"[2] of the

---

[1] Allied Products Corporation was named as a defendant in this case because it contracted to sell Seaboard the tract of land Seaboard sought to have rezoned.

[2] Section 16.25.001 Intent: Classes of special permits.

"Three (3) classes of special permits are established for the purpose of this part:

(a) Special use permits, decided by the council after public notice and hearing and recommendation by the zoning review board, are intended to be used in connection with uses of substantial significance or of unusual operational characteristics.

(b) Special administrative permits are intended to be used where complex or unusual technical determinations are involved and/or in conjunction with temporary uses and structures where the matter is not of such a nature as to require public notice and hearing. Such permits shall be processed by the bureau of planning.

(c) Special exceptions, decided by the board of zoning adjustment after public notice and hearing, are intended to be used in conjunction with cases where consideration of effects on the surrounding property is of principal importance."

Section 16-25.003 Special use permits, procedural requirements.

"(1) The council, after conformance with the requirements so established for special permits generally within this chapter and in conformance with the procedures and requirements so established in Chapter 27, 'Amendments,' may authorize those uses so designated under special use permits within the district regulations in chapters 3 through 17, from which they are otherwise prohibited.

(2) *Applications for Special Use Permits*: A property owner, or any other person with notarized written consent of the property owner, may file an application with the clerk of council in accordance with the requirements for amendments as stated in chapter 27. The application shall be filed on a form provided for such purpose and shall be accompanied by detailed plans showing exact lot size, location and size of the buildings, structure or improvements to be placed on site; the specific use of each building, structure, property, or part thereof; detailed arrangement of required parking spaces, location and means of ingress and egress; and, unless waived by the director of the bureau of planning, topographic information. The same detailed information shall be required where existing structures are to be used or retained under the terms of this chapter.

Plans shall be prepared, signed and sealed by a registered architect, engineer, landscape architect, registered with the State of Georgia, or planners who hold membership in the American Planning Association, competent in the preparation of detailed and accurate plans,

Atlanta City Code provides, "An application for a special use permit may not be withdrawn after advertisement for the public hearing at which it was to be considered, and substantially the same application shall not be considered within 24 months from the date of withdrawal or denial." Appellees argue, and the trial court found, that this section would prohibit the City Council from considering an ordinance for the special use permit within twenty-four months of the date it was denied. Thus the trial court concluded that the Council had no authority to consider "substantially the same application" for a special use permit which had been denied three months earlier.

The appellants point to the Atlanta City Code § 16-25.003 which deals with the procedural requirements of special use permits. Subsection one of § 16-25.003 states that "the Council, after conformance with the requirements so established for special permits generally within this chapter and in conformance with the procedures and requirements so established in *Chapter 27*, 'Amendments,'[3] may au-

---

drawn to scale. Said persons shall indicate on their plan their state registration number and shall certify that they are familiar with the City of Atlanta Zoning Ordinance, including revisions, and that to the best of their ability, these plans are accurate and comply with the general and district regulations of the zoning ordinance.

(3) *Changes in Plans*: The use of land or the use of a building permitted under the terms of this chapter shall not be changed, varied, extended, altered, modified or capacity increased, in any manner different from that specified in the original application and plans, until such change, variation, extension, alteration, modification or increase in capacity has been approved by the council.

(4) *Withdrawal or Denial of Applications*: An application for a special use permit may not be withdrawn after advertisement for the public hearing at which it was to be considered, and substantially the same application shall not be considered within 24 months from date of withdrawal or denial."

[3] Section 16-27.002 Amendments authorized.

"Whenever public necessity, public convenience, the general welfare or good zoning practice justify such action, and after consideration by the planning bureau and the zoning review board, the council may by ordinance amend the regulations contained herein or the boundaries of any maps officially established in relation thereto.

(1) *Initiation of amendments*: Proposed changes in regulations or in boundaries may be initiated by the council, a committee of the council, a council member, the planning bureau, or an application filed with the clerk of the council by the owner of the affected property or his authorized agent.

(2) *Applications required to be on forms supplied*: Applications shall be submitted on approved forms supplied to prospective applicants. Any communication purporting to be an application for a change shall be regarded as mere notice to seek relief until made in the form required by the owner of property involved or his authorized representative.

If a rezoning of specific property is involved, the application shall also be accompanied by a recent plat of survey prepared by a registered professional engineer or land surveyor.

(3) *Limitation on frequency of application affecting the same property*: After an application has been received affecting a lot or parcel or any part thereof, no further application for any change affecting the same property or any part thereof shall be filed within 24 months, except where the council has approved an ordinance to waive the 24-month waiting period between the filing of applications affecting the same parcel of property. This provision shall not be construed as impairing the right of the planning bureau or the council to propose amendment at any time on their own initiative. (Ord. No. 1982-74, Sec. 1, 12/21/82; Ord. No.

thorize these uses so designated under special use permits within the district regulations in Chapters 3 through 17, from which they are otherwise prohibited." (Emphasis supplied.)

Subsection two provides, in part, "A property owner, or any other person with notarized written consent of the property owner, may file an application [for a special use permit] with the clerk of council in accordance with the requirements for amendments so stated in *Chapter 27. . . ."* (Emphasis supplied.)

Section 16-27.002 (3) of Chapter 27 provides: *"Limitation on frequency of application affecting the same property.* After an application has been received affecting a lot or parcel or any part thereof, no further application for any change affecting the same property or any part thereof shall be filed within 24 months except where the Council has approved an ordinance to waive the 24-month waiting period between the filing of applications affecting the same parcel of property. This provision shall not be construed as impairing the right of the planning bureau or the council to propose amendment[s] at any time on their own initiative."

We agree with appellees that § 16-25.003 (1) and (2) mandate that both the City Council in authorizing special use permits, and property owners in applying for special use permits, comply with the procedures and requirements of not only Chapter 25, but also of Chapter 27. The trial court found that certain procedural requirements of § 16-27 "may well be read with and incorporated into § 16-25," but concluded that § 16-27.002 (3) is in direct conflict with § 16-25.003 (4). The trial court held that § 16-25.003 (4) controls where special use permits are at issue, and bars a City Council member from proposing an ordinance for a special use permit within 24 months after "substantially the same application" for a special use permit has been denied.

We do not agree that these two sections of the City Code are in conflict. Without § 16-25.003 (4), a property owner whose application had been denied could immediately renew "substantially the same ap-

1983-20, Sec. 1, 4/7/83)

(4) No application shall be scheduled for a public hearing before the zoning review board until all required materials have been submitted by the applicant. All members of the city council shall be notified in writing, at least two (2) weeks prior to scheduled hearing before the zoning review board, of all proposed amendments to the zoning ordinance.

(5) A true and correct copy of every application or ordinance proposing a change in district or text in the Zoning Ordinance of the City of Atlanta, whether initiated by the bureau of planning, by the council, or by an application filed as prescribed in this part, shall be submitted to the Atlanta Board of Education, the Atlanta Department of Environment and Streets, the Atlanta Department of Public Safety and the Fulton County Department of Public Health by the Atlanta Department of Budget and Planning, together with such other documents on file with such application as may be necessary to a complete understanding thereof. (Ord. No. 1981-95A, Sec. 1, 12/19/80)"

plication" again and again, with a resulting burden on the City Council. By placing a 24-month moratorium on the filing of an application for a special use permit after "substantially the same application" has been denied, the City Council is able to control its agenda, and avoid bothersome and useless reconsideration of applications which stand no chance of approval.

Under § 16-27.002 (3) a property owner may not file a duplicate application for a change in the use of his property within 24 months of the initial application *"except where the Council has approved an ordinance to waive the 24-month waiting period between the filing of applications."* (Emphasis supplied.) It is clear that the City Council may act to except a property owner from the 24-month moratorium where it deems the circumstances appropriate. Section 16-27.002 (3) further provides: "This provision shall not be construed as impairing the right of the planning bureau or the council to propose amendment[s] at any time on their own initiative." We interpret this provision to mean that a member of the Council may *at any time* introduce an ordinance proposing a special use permit, rezoning, or other "changes in regulations or boundaries" of the zoning map. § 16-27.002 (1). We do not believe it was the intent of the City Council to bind the hands of the Council members in proposing zoning ordinances. Rather, we conclude that the intent of placing a 24-month moratorium on the filing of successive applications by property owners while not so restricting Council members was to enable the Council to govern its own calendar with regard to zoning matters. Further, we note that § 16-27.002 (3) was enacted two years after the adoption of § 16-25.003 (4). We cannot conclude that the Council was unaware, in view of § 16-25.003 (4), of the considerable latitude § 16-27.002 (3) would afford Council members in proposing zoning ordinances.

Therefore, we hold the trial court erred in ruling that the City Council had no authority to act upon the ordinance introduced by councilman Finley authorizing a special use permit for appellant Seaboard.

2. The City Council conditioned the grant of the special use permit to Seaboard "upon the requirement that the transport and the handling of toxic and hazardous materials as defined by Federal law at the site of the piggyback facility is strictly prohibited." The trial court found that under 49 USC § 1811 (b) of the Hazardous Materials Transportation Act,[4] Congress has "set forth a method for advanced

---

[4] 49 USC § 1811 (b) provides:

"Any requirement, of a State or political subdivision thereof, which is not consistent with any requirement set forth in this chapter, or in a regulation issued under this chapter, is not preempted if, upon the application of an appropriate State agency, the Secretary determines, in accordance with procedures to be prescribed by regulation, that such requirement

determination of the enforceability of local requirements." The trial court enjoined the enforceability of the special use permit until the appellants obtained a determination of whether this condition conformed to Federal law.

We do not agree with the trial court's interpretation of 49 USC § 1811 (b). We find nothing in § 1811 (b) to *require* the prior approval of any agency of the federal government before a local condition can become effective. This section merely provides an administrative means for determining if a state or local law is preempted by federal law. Section 1811 (b) does not contain a requirement that state or local legislation receive prior clearance before enactment. Therefore, the trial court erred in enjoining the enforceability of the special use permit until the prohibition against handling of hazardous materials was approved by the federal government.

The appellees' motion to strike from appellant Seaboard's brief exhibits in connection with this enumeration of error is granted as these exhibits were not made a part of the record in this case.

3. Atlanta City Code § 16-27.011 provides, *"It is the policy* of the council regarding proposed amendments that favorable action shall be taken only upon making the following findings:" that the amendments are in accord with the City's comprehensive development plans; that they conform with the intent statement set forth in district regulations; and that the amendments are justified on the grounds of public necessity, public convenience, the general welfare or good zoning practice. (Emphasis supplied.)

The trial court found that "the procedural requirements of § 16-27.011 are mandatory," and ruled the ordinances in this case are invalid as the City Council failed to state into the record its findings that the ordinances comply with § 16-27.011.

We do not agree with the trial court that the language of § 16-27.011 requires the City Council to make written or articulated findings. Rather, this Code Section states the policy of the City Council which is to guide the Council in making its decision.

4. Because of the result we reach in Division 1 of this opinion, we find it unnecessary to address appellants' remaining enumerations of errors.

*Judgment reversed. Marshall, P. J., Clarke, Gregory, Weltner, Bell, JJ., and Judge Hilton M. Fuller concur. Hill, C. J., not participating. Smith, J., disqualified.*

---

(1) affords an equal or greater level of protection to the public than is afforded by the requirements of this chapter or of regulations issued under this chapter and (2) does not unreasonably burden commerce. Such requirement shall not be preempted to the extent specified in such determination by the Secretary for so long as such State or political subdivision thereof continues to administer and enforce effectively such requirement."

DECIDED JUNE 18, 1985.

*Troutman, Sanders, Lockerman & Ashmore, Norman L. Underwood, Donald W. Janney,* for appellant.

*Amy M. Totenberg, John R. Myer, Thomas A. Bowman, Rogers & Hardin, John J. Almond,* for appellees.

*Sumner & Hewes, William E. Sumner,* amicus curiae.